# IN THE COURT OF APPEALS OF IOWA

No. 14-0640
Filed February 11, 2015

**DEANNA JO RAMIREZ-TRUJILLO,**
        Plaintiff-Appellant,

**vs.**

**QUALITY EGG, L.L.C., WRIGHT COUNTY
EGG DIVISION and SELECTIVE INSURANCE
COMPANY OF AMERICA,**
        Defendant-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        An employee appeals from a district court ruling upholding the Iowa

Workers' Compensation Commissioner's award of benefits and reversing the

commissioner's award of certain medical expenses.  **AFFIRMED IN PART AND**

**REVERSED IN PART.**


        Mark S. Soldat of Soldat, Parrish-Sams & Gustafson, P.L.C., West Des

Moines, for appellant.

        Richard G. Book of Huber, Book, Cortese & Lanz, P.L.L.C., West Des

Moines, for appellees.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Deanna Ramirez-Trujillo appeals from an adverse ruling by the district court on her petition for judicial review of the Iowa Workers' Compensation Commissioner's decision, which determined her condition subsequent to September 30, 2009, was not the result of her August 1, 2009 work injury, thus denying her benefits after September 30, 2009. Ramirez-Trujillo also appeals from an adverse ruling by the district court reversing the commissioner's decision that ordered the employer and its insurance carrier to reimburse and hold Ramirez-Trujillo harmless from medical expenses she incurred after September 30, 2009. We affirm in part and reverse in part.

**I.    *Background Facts and Proceedings***

On August 1, 2009, Ramirez-Trujillo sustained an injury to her low back when she slipped and fell on some egg on the floor at the place of her employment. She was authorized by her employer to treat at the Wright Medical Center for her low-back work injury of August 1, 2009. She continued to treat at the Wright Medical Center for low-back problems after incidents occurring in December 2009 and May 2010. An L5-S1 surgical decompression was performed in August 2010. She was released to work in October 2010, but returned to Wright Medical Center in November 2010, complaining of low-back pain. She was seen again at the Wright Medical Center in November 2010, for recurring low-back pain. In January 2011, Ramirez-Trujillo's doctors placed work restrictions on her of no lifting greater than twenty pounds and no repetitive bending or twisting. Another L5-S1 surgical decompression was performed in March 2011.

Ramirez-Trujillo filed her contested case petition in October 2010. Hearing was held before a deputy workers' compensation commissioner in June 2011. The hearing deputy's arbitration decision was filed April 27, 2012. In pertinent part, the hearing deputy held: "After all of the evidence is considered in its entirety; it is the determination of the undersigned; [Ramirez-Trujillo's] condition subsequent to September 30, 2009 was not the result of her work injury on August 1, 2009. [Ramirez-Trujillo] takes nothing in the way of benefits after September 30, 2009." Ramirez-Trujillo's rehearing application was denied by the hearing deputy. Ramirez-Trujillo appealed to the commissioner.[1] The commissioner issued an appeal decision on April 25, 2013, which affirmed in part and modified in part the arbitration decision. The commissioner agreed "with the decision and analysis by the hearing deputy that [Ramirez-Trujillo's] back condition after September 30, 2009 is not causally related to the work injury of August 1, 2009." But, the commissioner ordered the employer and its insurance carrier (collectively "employer") to reimburse Ramirez-Trujillo for out-of-pocket medical expenses she incurred after September 30, 2009, even though the expenses were not incurred as a result of the work injury, because the employer failed to notify Ramirez-Trujillo that the care was no longer authorized as required by Iowa Code section 85.27(4) (2009).

Ramirez-Trujillo filed an application for rehearing. The commissioner denied the rehearing but modified the arbitration decision in a respect not

---

[1] An appeal deputy, as designee of the commissioner, issued the appeal decision. For our purposes, we refer to the appeal deputy simply as the commissioner.

germane to this appeal. Ramirez-Trujillo filed a petition for judicial review and the employer filed an answer and cross-petition.

In her petition for judicial review, Ramirez-Trujillo argued, among other things, that the commissioner's findings of fact and conclusions of law failed to comply with Iowa Code section 17A.16(1), and the deputy erred in misapplying and/or failing to apply the laws of proximate cause, sequelae, and probability/possibility with corroboration to the facts. In its cross-petition, the employer argued the commissioner erred by ordering it to reimburse and hold Ramirez-Trujillo harmless for the out-of-pocket medical expenses she incurred after September 30, 2009.

The district court affirmed in part and reversed in part the commissioner's decision. The court found "that the [commissioner] did not violate section 17A.16(1) because it is possible to deduce the agency's legal conclusions and findings of fact from its written decision." Further, the court found the commissioner's decision to be supported by substantial evidence considering the hearing deputy gave more weight to some expert testimony and less to others. Although the hearing deputy did not explicitly set out the basis for her rejection of the testimony of Ramirez-Trujillo's friends, the court found "it is apparent from the decision that she considered and rejected this testimony." The court found no error in the commissioner's application of the laws of proximate cause, sequelae, and probability/possibility with corroboration to the facts, and affirmed the commissioner's findings of fact and conclusions of law.

On the employer's cross-petition, the court concluded, "It is erroneous to interpret section 85.27(4) to require [the employer] to pay for medical treatment

when [it] reasonably believed that the work injury was resolved and [Ramirez-Trujillo] told [the employer] that the treatment was for a separate, non-work-related injury." The court reversed the commissioner's order regarding the section 85.27(4) issue. Ramirez-Trujillo's motion to enlarge, amend, modify and/or substitute was denied. She now appeals.

## II. Discussion

### A. Commissioner's Findings of Fact and Conclusions of Law

On appeal, Ramirez-Trujillo raises to us the same arguments she raised before the district court: the appeal deputy erred in failing to comply with Iowa Code section 17A.16(1), and the commissioner erred in misapplying and/or failing to apply the laws of proximate cause, sequelae, and probability/possibility with corroboration to the facts.

At the outset, we note our review of final agency action is "severely circumscribed." *See Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 839 (Iowa 2002); *Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995). Nearly all disputes are won or lost at the agency level; the cardinal rule of administrative law is that judgment calls are within the province of the administrative tribunal, not the courts. *See id.*

In the realm of workers' compensation proceedings, it is the workers' compensation commissioner, not the court, who weighs the evidence and measures the credibility of witnesses. *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011). This includes the "determination of whether to accept or reject an expert opinion," as well as the weight to give the expert testimony. *See id.* Because these determinations remain within the agency's

exclusive domain and the "peculiar province" of the commissioner, we cannot reassess the weight of the evidence. *See id.*; *see also Robbennolt v. Snap-On Tools Corp.*, 555 N.W.2d 229, 234 (Iowa 1996). In fact, "'we are obliged to apply those findings broadly and liberally to uphold rather than defeat the commissioner's decision.'" *Pirelli-Armstrong Tire Co. v. Reynolds*, 562 N.W.2d 433, 436 (Iowa 1997) (quoting *Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 123 (Iowa 1995).

"We are bound by the commissioner's factual determinations if they are supported by substantial evidence in the record before the court when that record is viewed as a whole." *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014) (citation and internal quotation marks omitted). "Substantial evidence" is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). When we conduct a substantial evidence review of an agency decision, it is not for us to make "a determination as to whether evidence 'trumps' other evidence or whether one piece of evidence is 'qualitatively weaker' than another piece of evidence." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394 (Iowa 2007). "On appeal, our task 'is not to determine whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence . . . supports the findings actually made.'" *House*, 843 N.W.2d at 889 (quoting *Pease*, 807 N.W.2d at 845).

We have carefully reviewed the record, the briefs of the parties, and the district court's ruling. The district court's ruling identifies and considers all the issues presented. In applying the above precepts, and in giving the due deference we are statutorily obligated to afford the commissioner's findings of fact, we approve of the reasons and conclusions in the district court's ruling. Further discussion of the issues would be of no value. *See* Iowa Ct. R. 21.26(1)(b), (d), and (e). Accordingly, we affirm the district court's decision affirming the commissioner's decision as to Ramirez-Trujillo's petition.

### B. Iowa Code section 85.27(4) Notice

In his appeal decision, the commissioner stated:

> Although I agree with the hearing deputy that the medical expenses incurred after September 30, 2009 are not causally related to the work injury, I find that [the employer] failed to notify [Ramirez-Trujillo] pursuant to Iowa Code section 85.27(4) that further treatment of her back by these previously authorized providers would not be authorized. The office notation of the authorized provider specifically stated that if further problems should arise, [Ramirez-Trujillo] may return to the clinic. (Exhibit I, page 61). All of the expenses were incurred by [Ramirez-Trujillo] for medical care by either an originally authorized provider or upon referral by an authorized provider. *See* Workers' Compensation, Iowa Practice 15, (2012), section 15-2. [Employer] apparently concede[s it] provided no notice of non-authorization as required by Iowa Code section 85.27(4). [Employer is] obligated to monitor the care [it] authorized and to pay for the authorized care, even if the care is ultimately not found work related. *Becker v. Clinton Engineering, Inc.*, No. 12-05139 (App. July 3, 2001); *Janssen v. U.P.S.*, No. 10-19753 (App. April 29, 1994). Therefore, these expenses will be awarded as well.

The commissioner ordered that the employer "shall reimburse [Ramirez-Trujillo] for her out of pocket medical expenses and shall hold [her] harmless from the remainder of those expenses."

On judicial review, the district court concluded:

This Court disagrees with the [commissioner's] interpretation of section 85.27(4) that would require the [employer] to reimburse [Ramirez-Trujillo] for medical expenses that are not causally related to a work injury. Section 85.27(4) contemplates a situation in which the employer chooses the care for the employee, but afterwards decides not to pay for the medical expenses. In such a case, the statute states that the employer would be liable for the medical expenses until it notifies the employee that it is no longer authorizing the care it once authorized. That is not the situation in this case.

Here, the [employer] authorized [Ramirez-Trujillo] to see Ms. Whitehill[2] at the Wright Medical Center after she sustained her August 1, 2009 work injury. The [employer] paid for the medical expenses up until September 30, 2009, when [Ramirez-Trujillo] was discharged from Ms. Whitehill's care and returned to work without restrictions.[3] At this point, the [employer] reasonably believed that [Ramirez-Trujillo] had recovered from her work injury and that she would not be seeking further care.[4] Several months later, [Ramirez-Trujillo] suffered an unrelated injury away from work when she was shoveling snow at her home. Later, she again hurt her back going up some stairs at her house.

For both of these non-work injuries, [Ramirez-Trujillo] sought care at the Wright Medical Center. However, she never notified the [employer] or the staff at the medical center that these injuries were work related. In fact, there is evidence that she specifically told her employer and medical providers that her work injury had resolved, these injuries were not related to the work injury, and they were not Workers' Compensation cases. The [employer was] not on notice until January 2011 that [Ramirez-Trujillo] was seeking medical care for conditions related to her work injury subsequent to September 30, 2009. It is erroneous to interpret section 85.27(4) to require the [employer] to pay for medical treatment when [it] reasonably

---

[2] The employer authorized "WMC" (Wright Medical Center) to treat Ramirez-Trujillo.

[3] The September 30, 2009 report was by Andriana Sikyta, P.A.-C, not Melanie Whitehill, P.A.-C. The note states: "At this time [Ramirez-Trujillo] may continue to take the medications that she has at home, as she has been taking them. However, they are not needed on a regular basis. She does not need to follow up anymore at this time. She may continue ice and heat as needed if her back gets sore. If further problems should arise, she may return to the clinic. However, at this time, no follow up is needed." The return to work information indicated Ramirez-Trujillo was "medically fit to work" "regular duty." No restrictions were listed and the report indicated, "No follow-up care is necessary."

[4] Ramirez-Trujillo argues, "Whatever the employer 'reasonably believed' about continuing care is not even close to being a notice of that belief to Ramirez. Furthermore, [the district] court failed to denote any evidence in the record that the employer held a reasonable belief" and that such a belief is unsupported by any evidence in the record. We agree.

> believed that the work injury was resolved and [Ramirez-Trujillo] told [it] that the treatment was for a separate, non-work-related injury.

The district court reversed the commissioner's order requiring payment or reimbursement for Ramirez-Trujillo's post September 30, 2009 medical expenses.

Iowa Code section 85.27(4) provides, in pertinent part, "If the employer chooses the care, the employer *shall hold the employee harmless* for the cost of care *until the employer notifies* the employee that the employer is no longer authorizing all or any part of the care and the reason for the change in authorization." (Emphasis added.) There is no dispute the employer chose Ramirez-Trujillo's medical care for her August 1, 2009 work injury. There is also no dispute the employer did not provide Ramirez-Trujillo with a section 85.27(4) notice regarding medical treatment for her post-September 30, 2009 injuries. The question of first impression we must answer is whether or not the employer was required to give Ramirez-Trujillo a section 85.27(4) notice under these circumstances.

When we review the district court's judicial review decision of a workers' compensation commissioner's decision or order, we apply the standards of chapter 17A, the Iowa Administrative Procedures Act, to determine if we would reach the same conclusions as the district court. *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 88 (Iowa 2013). This appeal concerns the interpretation of section 85.27(4). The legislature has not delegated any interpretive authority to the workers' compensation commissioner to interpret Iowa Code chapter 85. *Id.*

Therefore, we review questions of statutory interpretation of section 85.27(4) for errors at law. *See Id.* at 89.

In interpreting or construing a statute our goal is to determine legislative intent. *Id.* at 90; *see Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 648 (Iowa 2013). We first look to the language chosen by the legislature. *Coffey*, 831 N.W.2d at 90. If the statute's language is plain and unambiguous, we look no further. *Jimenez*, 839 N.W.2d at 648. We employ a "reasonable or liberal construction which will best effect, rather than defeat, the legislature's purpose." *Coffey*, 831 N.W.2d at 90. Furthermore, our interpretation of the statute is guided by the principal purpose of the workers' compensation statute, that is, to benefit the worker. *Denison Mun. Utils. v. Iowa Workers' Comp. Comm'r*, 857 N.W.2d 234-235 (Iowa 2014). "To that end, we liberally construe the workers' compensation statute in favor of the worker." *Id.*

The statutory language seems clear enough. When the employer chooses the care, as here, "the employer shall hold the employee harmless for the cost of care until the employer notifies the employee that the employer is no longer authorizing all or any part of the care and the reason for the change in authorization." Iowa Code § 85.27(4). The employer urges us to incorporate limiting language in the statute that is not there. It argues a reasonable construction of the statute would not require an employer to notify an employee that care is no longer authorized where it "reasonably believed" that the employee "was not treating for a condition caused by the work injury." It argues the statute is inapplicable where the healthcare provider does not handle the injury as a work-related injury and does not seek authorization from the employer

for the care. It argues further the statute is inapplicable when "it appears that the claimant has recovered from the work injury, has been released from care and subsequently treats for a series of non-work related injuries without ever reporting the care as being work related or seeking authorization of the care."

The statute does not include any of this limiting language. We give legal effect to what the legislature actually said as expressed in the text of the statute as opposed to what the legislature might have said. *See Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011) ("We determine the legislature's intent by the words the legislature chose, not by what it should or might have said."). "We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction." *Id.* Under the circumstances presented in this case, we believe the employer, in order to divest itself of any further responsibility for Ramirez-Trujillo's continuing low-back medical expenses, had a duty under section 85.27(4) to notify Ramirez-Trujillo further low-back care was no longer authorized and the reason for the change in authorization. We understand a burden is thus placed upon employers to communicate with their employees. This is a minimal burden, however, and one already implicit in, if not specifically required by, section 85.27(4).[5] Furthermore, this interpretation is consistent with our approach to interpret workers'

---

[5] Our holding is not meant to suggest that it would be unreasonable to require an employee, under the circumstances presented here, to communicate with his or her employer in such a way that the employer is put on notice that medical care is needed. *See K-Mart Corp. v. Morrison*, 609 N.E.2d 17, 34 n. 17(Ind. Ct. App. 1993), *aff'd*, 645 N.E.2d 18, 22 (Ind. Ct. App. 1995) ("We understand that by this we are putting a burden upon recipients of workers' compensation benefits to communicate with their employers. This is a minimal burden, however, and one already implicit in [Indiana statute and case law].") However, no such duty has been statutorily imposed by Iowa statute.

compensation statutes liberally in favor of the worker. *See Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 207 (Iowa 2010).

Accordingly, we reverse the district court to the extent that it ruled in favor of the employer on the section 85.27(4) notice issue, reversing the commissioner.

**AFFRMED IN PART AND REVERSED IN PART.**