# IN THE SUPREME COURT OF IOWA

No. 11–1106

Filed May 10, 2013

**CHARLES R. COFFEY,**

Appellant,

vs.

**MID SEVEN TRANSPORTATION COMPANY** and
**GREAT WEST CASUALTY COMPANY,**

Appellees.

Appeal from the Iowa District Court for Polk County, Richard G. Blane, II, Judge.

An injured employee appeals an adverse ruling by the district court dismissing his review-reopening petition because it was untimely filed. **AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**

Charles E. Cutler and Amanda R. Rutherford of Cutler Law Firm, P.C., West Des Moines, for appellant.

Stephen W. Spencer and Christopher S. Spencer of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, West Des Moines, for appellees.

**WIGGINS, Justice.**

An injured employee petitioned to review-reopen a workers' compensation claim under Iowa Code section 85.26(2) (2007), seeking additional workers' compensation benefits from the employer and its insurer. The workers' compensation commissioner and district court rejected the petition as untimely. The injured employee also sought reimbursement for additional postarbitration medical expenses. The commissioner rejected, and the district court affirmed denial of, reimbursement for some of the medical expenses, finding substantial evidence did not support a causal connection between the work-related injury and certain claimed expenses. Next, the injured employee requested that the commissioner, and later the district court, determine the amount of workers' compensation benefits still owed by the employer and its insurer. Finally, the injured employee asked the district court to decide whether the commissioner needed to enter an additional order compelling payment to enforce the arbitration award for the unpaid benefits. The commissioner did not provide the requested calculation, but did rule that the compel-payment order was unnecessary, because the injured employee could seek a judgment to enforce the award under Iowa Code section 86.42. The district court affirmed.

On appeal, we reverse that part of the district court judgment affirming the commissioner's ruling on the statute of limitations for a petition for review-reopening. Accordingly, we remand the case to the district court to reverse the commissioner's decision regarding the statute of limitations and to remand the case to the workers' compensation commissioner with directions. The district court should direct the commissioner first to determine the outstanding amounts under the arbitration award and the review-reopening decisions for

medical expenses, mileage, healing period, permanent partial disability, interest, and other amounts due under these decisions. Next, the commissioner should determine the credit due to the employer and its insurer in light of the third-party settlements.

We affirm that part of the district court judgment affirming the commissioner's ruling that addressed which medical expenses are causally connected to the work-related injury.

## I. Facts.

Charles Coffey worked full-time for Mid Seven Transportation Company as an over-the-road truck driver. Great West Casualty Company is the workers' compensation insurer for Mid Seven.[1]

On February 8, 1994, while working in Missouri, Coffey fell on an icy parking lot at a truck stop and an eighteen-wheel tractor-trailer struck him and ran over his left leg and foot. The facts of this incident are not in dispute. Coffey sustained a left medial malleolar fracture and suffered from compartment syndrome in his left leg.

After several surgeries, Coffey began extensive physical therapy. Coffey was motivated to rehabilitate so he could begin working again, but has been unable to return full-time. Coffey reached maximum medical improvement in August 1994.

Coffey also suffers from post-polio syndrome (PPS). This causes whole-body fatigue, muscle weakness, pain, and cramping in both legs, the pelvis, and the lower back. Other symptoms include difficulty breathing and swallowing.

---

[1] For clarity, the opinion refers to Mid Seven and Great West collectively as "Mid Seven." Great West is only referred to by name where it acted independent of Mid Seven.

Physicians have indicated Coffey cannot return to work as a truck driver. Since the accident, Coffey worked part-time during 1996, 1997, and briefly in 1998 as a substitute school bus driver. The most he earned annually was $7800 before terminating his employment due to medical complications relating to his right shoulder.

Coffey applied for and received social security disability benefits for PPS. The Social Security Administration found Coffey was disabled as of June 26, 1997, and awarded benefits starting that December. Coffey receives approximately $1192 per month.

## II. Prior Proceedings.

Prior to filing his workers' compensation claim, Coffey entered into a settlement with a third party. On December 22, 1997, he settled a third-party claim for $275,000. After the payment of fees, legal expenses, and employer–insurer reimbursements, Coffey received $134,784.95.

Coffey then filed a claim with the workers' compensation commissioner on January 28, 1998. Coffey claimed injury to his back, leg, and head. He also indicated the accident caused PPS. Mid Seven answered on February 2, admitting the work-related injury occurred on the date specified on the face of the petition.

Prior to the arbitration decision, Mid Seven made workers' compensation payments to Coffey totaling $70,783.19. This amount included healing period, permanent partial disability, medical expenses, and mileage. There is no indication the parties filed a memorandum of agreement controlling the payment of benefits.

In late 2001, before the arbitration hearing, Coffey and his wife entered into another third-party settlement for $100,000. The parties to the settlement allocated $60,000 of this amount to the settlement of

Coffey's wife's claim for loss of consortium. Of the remaining $40,000 allocated to Coffey, he netted $24,634.14 after the payment of legal fees and expenses.

After rescheduling the arbitration proceeding numerous times at the request of the parties, the hearing occurred on September 5, 2002. The deputy commissioner found Coffey was entitled to workers' compensation benefits. The deputy commissioner also determined Coffey's work-related accident caused PPS, which disabled not just his extremities, but caused him a seventy-five percent industrial disability. However, the deputy commissioner found Coffey's pulmonary, cardiac, vascular, and thyroid problems, as well as bladder cancer and issues related to his spinal column and shoulders, were not work-related.

Based on these findings, the deputy commissioner ordered Mid Seven to pay Coffey 375 weeks of permanent partial disability benefits starting from August 16, 1994, at the weekly benefit rate of $472.18 per week. As Mid Seven had underpaid healing period benefits at the rate of $392.33 from February 9, 1994, through August 15, 1994, the deputy ordered Mid Seven to satisfy that obligation by paying Coffey $79.85 per week. Mid Seven was also ordered to pay certain disputed medical expenses, including travel costs for all PPS-related medical care. Mid Seven was required to pay accrued benefits in a lump sum with interest at the rate allowable by law, while receiving a credit for all benefits previously paid. The arbitration award assessed the costs to Mid Seven.

An intra-agency appeal followed. The commissioner affirmed the deputy commissioner's decision without modification on March 23, 2004.

Mid Seven then sought judicial review of the agency decision, claiming the commissioner erred in finding Coffey developed PPS from the work-related injury and in setting Coffey's rate of compensation at

$472.18 per week. The district court affirmed the commissioner's decision.

We transferred Mid Seven's appeal to the Iowa Court of Appeals. The court of appeals affirmed the district court's decision. We denied Mid Seven's application for further review on January 11, 2006.

On January 18, Mid Seven wrote to Coffey's attorney, stating the third-party recoveries totally covered Coffey's workers' compensation award, but asked if the attorney contended any sums were due to Coffey. Coffey's attorney responded on January 20, indicating he would "be happy to go back and look to see what we think is due on this award. . . . [A]t least one-third of the amount awarded is due."

Four days later, counsel for Mid Seven wrote the following to Coffey's attorney: "I appreciate you letting us know what percentage contingency you had for the Workers' Compensation case." The same correspondence communicated Mid Seven's claim of a $415,000[2] credit on any award. Counsel for Mid Seven calculated the employer's underpayment of weekly benefits owed under the agency's appeal decision to be $154,719.26. The $154,719.26 equaled an underpayment of $7129.49 due to the higher weekly benefit rate awarded by the commissioner plus $147,589.77 for an additional 312 weeks and 4 days of weekly benefits. Counsel's calculation of the underpayment total did not include any amount for mileage, medical payments, or interest owed by Mid Seven under the final agency decision. Because the available credit arising from the third-party settlements exceeded the

---

[2]Mid Seven's claim of a $415,000 credit appears to be an error. The prior third-party settlements grossed Coffey $315,000. The amount previously paid by Coffey to Mid Seven was $70,904.33. Thus, the gross credit available to Mid Seven could not exceed $244,095.67.

underpayment of weekly benefits as calculated by Mid Seven's counsel, the letter further stated:

> Under relatively recent Supreme Court precedent, it appears that *all we owe* would be a *reimbursement of attorney fees* to your client *reimbursing him for attorney fees paid in the third party case to establish our credit.* I understand now that you had a one-third attorney fee arrangement. A one-third fee of $154,719.26 of the credit being used comes to $51,573.09. I have asked my client to send you a check in that amount made payable to Mr. Coffey.
>
> . . . .
>
> Please let me know if you have any disagreement with our math or any other problems or questions.

(Emphasis added.)

In response, Coffey's attorney sent a letter to counsel for Mid Seven on January 30, disagreeing with Mid Seven's calculation of its credit against its obligation to make additional payments under the commissioner's decision. This letter claimed Mid Seven owed Coffey more than $154,719.26. Nonetheless, Great West issued a check that same day to "Charles Coffey and Charles Cutler, His Attorney" for "Reimbursement of Attorney Fees." The check amount was $51,573.09—one-third of the total amount of benefits Mid Seven claimed it owed under the commissioner's appeal decision.

On April 2, 2008, Coffey filed a petition for review-reopening under Iowa Code section 85.26(2). Coffey sought additional disability benefits, reimbursement of medical expenses, an order requiring Mid Seven to pay the amount still due under the final agency decision, and a calculation of the credit to which Mid Seven was entitled as a consequence of the third-party recoveries. A deputy commissioner held a hearing on the petition and found the claim for additional disability benefits was untimely under the applicable statute of limitations. The deputy commissioner

concluded the statute of limitations on Coffey's review-reopening claim for additional weekly benefits commenced running on March 23, 2004, the date of the intra-agency appeal decision. Specifically, the deputy commissioner's decision stated:

> I find the [workers' compensation] statute is not ambiguous. I find the three year statute of limitations period for filing a petition in review-reopening set forth in Iowa Code section 85.26(2) contemplates, where no payment of weekly benefits occurs after the award, that the three year period runs from the final agency action awarding benefits, as it is that date on which the award to be reviewed comes into existence. In this case, that occurred when the workers' compensation commissioner issued his appeal decision on March 23, 2004. Three years from that date is March 23, 2007. Claimant did not file his petition for review-reopening until April 2, 2008.

However, the deputy commissioner did order Mid Seven to pay the work-related medical expenses proved by Coffey at the hearing. Nevertheless, the deputy commissioner did not determine the amount still due, if any, under the commissioner's appeal decision or the credit to which Mid Seven was entitled as a consequence of the third-party settlements. The deputy commissioner found Mid Seven's payment of $51,573.09 to Coffey was not intended as benefits by either party, but rather as reimbursement of Coffey's attorney fees incurred in achieving the third-party settlements. Finally, the deputy commissioner concluded an order compelling additional payment by Mid Seven was unnecessary because Coffey could seek a judgment under Iowa Code section 86.42.

Both parties sought an intra-agency appeal of the review-reopening decision. The commissioner thereafter issued an appeal decision upholding the conclusion that Coffey's review-reopening petition was untimely. However, the commissioner reversed the previous finding that Mid Seven must pay all of the medical expenses Coffey proved at the hearing on the review-reopening petition. The commissioner found

Coffey failed to prove that most of the medical expenses were causally connected to his work-related injury. The commissioner's ruling affirmed the deputy's conclusion that no further order requiring Mid Seven to pay the medical expenses was necessary because Coffey could seek a judgment for those expenses under Iowa Code section 86.42.

Coffey filed a motion to reconsider the review-reopening appeal decision. The commissioner denied the motion. Coffey then sought judicial review. The district court affirmed the commissioner's decision. Coffey appeals.

### III. Issues.

In this appeal, we are required to determine when the statute of limitations for a review-reopening petition commences when an employer and its insurer are entitled to credit under Iowa Code section 85.22(1) for benefits due. Next, we must decide if the commissioner erred in identifying the medical expenses causally connected to Coffey's work-related injuries. Finally, we must determine whether the commissioner erred in failing to calculate the total benefits due to Coffey under the commissioner's appeal decision and whether a compel-payment order is a feasible method of enforcement if the calculation reveals Mid Seven has not fully paid all of the workers' compensation benefits owed under that decision.

### IV. Standard of Review.

An individual adversely affected by an action of the workers' compensation commissioner is entitled to judicial review under the Iowa Administrative Procedures Act (IAPA). Iowa Code § 86.26. Iowa Code section 17A.19(10) of the IAPA governs judicial review of administrative agency decisions. *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 36 (Iowa 2012). When we review the district court decision,

we apply the standards of the IAPA to determine if we would reach the same conclusions as the district court. *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 252 (Iowa 2010).

This appeal concerns the interpretation of sections 85.22(1) and 85.26(2). "If the legislature clearly vested the agency with the authority to interpret the statute at issue," we reverse the agency decision only when its interpretation is " 'irrational, illogical, or wholly unjustifiable.' " *NextEra,* 815 N.W.2d at 37 (quoting *Doe v. Iowa Dep't of Human Servs.,* 786 N.W.2d 853, 857 (Iowa 2010)). However, if the legislature did *not* clearly vest the agency with such authority, we will reverse the agency decision if it relies on an erroneous interpretation of the law. *Id.*

We have previously held the legislature has not delegated any special powers to the workers' compensation commissioner regarding statutory interpretation of Iowa Code chapter 85, which governs workers' compensation. *Waldinger Corp. v. Mettler*, 817 N.W.2d 1, 4–5 (Iowa 2012). The same analysis applies to sections 85.22(1) and 85.26(2). Accordingly, we conclude the legislature has not clearly vested the agency with interpretive authority for these statutes. Therefore, we review the questions of statutory interpretation in this instance for errors at law. Iowa Code § 17A.19(10)(*c*); *see also Xenia,* 786 N.W.2d at 252–53.

The second issue on appeal concerns the commissioner's finding of fact that only certain medical expenses were causally connected to the work-related injury. When reviewing the commissioner's findings of fact, the following principles guide our review:

> The industrial commissioner's findings have the effect of a jury verdict. We may reverse the commissioner's findings of fact only if they are unsupported by substantial evidence in the record made before the agency when the record is viewed as a whole. Evidence is substantial if a reasonable mind would find it adequate to reach the same conclusion. An

agency's decision does not lack substantial evidence because inconsistent conclusions may be drawn from the same evidence.

*2800 Corp. v. Fernandez*, 528 N.W.2d 124, 126 (Iowa 1995) (citations omitted). We further define substantial evidence as:

> the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1).

We look to the whole record made before the agency to determine whether substantial evidence supports the commissioner's decision. *Id.* § 17A.19(10)(*f*). We do not consider the evidence insubstantial merely because we may draw different conclusions from the record. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007).

## V. Statute of Limitations.

Iowa Code section 85.26(2) contains the statute of limitations for review-reopening proceedings. It provides in relevant part:

> An award for payments or an agreement for settlement provided by section 86.13 for benefits under this chapter or chapter 85A or 85B, where the amount has not been commuted, may be reviewed upon commencement of reopening proceedings by the employer or the employee within three years from the date of the last payment of weekly benefits made under the award or agreement.

Iowa Code § 85.26(2). All parties acknowledge a review-reopening petition must be filed within three years from the date of the last payment of weekly benefits made under the award or agreement. However, the parties disagree on when the date of last payment occurred on this record, given that Coffey received third-party settlements *before* the arbitration decision, allegedly offsetting any benefits due to Coffey because of the employer's subrogation rights under section 85.22(1).

Mid Seven argues the three-year statute of limitations for the review-reopening petition commenced from the date the commissioner issued the arbitration award. The commissioner agreed with this interpretation of section 85.26(2).

Coffey challenges this conclusion with two arguments. First, if the three-year limitation period commences on the date the commissioner issues the award, Coffey contends the $51,573.09 payment by Mid Seven constituted weekly benefits under the award; therefore, the statute of limitations commenced on the date of that payment. Second, Coffey argues the three-year limitation period did not commence until this court denied further review of the arbitration action.

When interpreting a statute contained in the workers' compensation act, our goal " 'is to determine and effectuate the intent of the legislature.' " *Second Injury Fund of Iowa v. George*, 737 N.W.2d 141, 147 (Iowa 2007) (quoting *United Fire & Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 677 N.W.2d 755, 759 (Iowa 2004)) (internal quotation marks omitted). We determine legislative intent by looking at the language chosen by the legislature. *Id.* In doing so, we adopt " 'a reasonable or liberal construction which will best effect, rather than defeat, the legislature's purpose.' " *Id.* (quoting *United Fire*, 677 N.W.2d at 759).

The plain language of the statute requires the three-year period to commence from "the date of the last payment of weekly benefits made under the award or agreement." Iowa Code § 85.26(2). In this record, a factual dispute exists concerning the date Mid Seven made its last payment of weekly benefits to Coffey. Coffey asked the commissioner to determine this factual dispute in his petition for review-reopening. Instead of resolving this issue, the commissioner framed the legal question as follows: "[H]ow is the statute to be interpreted in terms of a

statute of limitations for bringing a review-reopening action when no weekly benefits were paid after the arbitration decision?" Essentially, the commissioner agreed with Mid Seven that no further benefits were owed to Coffey after the arbitration award because of the credit due to the employer and its insurer under section 85.22(1).

Under this record, we cannot say the section 85.22(1) credit covered all the weekly benefits awarded in the arbitration proceeding. This conclusion is required in light of Coffey's claim that not all of the weekly benefits owed by Mid Seven were offset by the credit, given the amount of interest due on those benefits and the failure of Mid Seven to pay all the medical bills, mileage, and interest awarded under the arbitration decision. We agree with Coffey that the commissioner must first decide these issues of fact before determining the date of Mid Seven's last payment of weekly benefits under the arbitration award.

Consequently, we must remand this case to the commissioner for a determination of whether all benefits owed by Mid Seven under the arbitration award, plus interest, were offset by the credit Mid Seven was entitled to receive pursuant to section 85.22(1) as a consequence of the third-party settlements. In making this calculation, the commissioner should be aware that we have recognized that when the injured employee receives a third-party settlement prior to the employer or its insurer paying all the benefits due under an arbitration award, the proper way to calculate attorney fees is using the periodic payment method. *Ewing v. Allied Const. Servs.*, 592 N.W.2d 689, 691 (Iowa 1999). The periodic payment method requires the commissioner to calculate the date of the last payment of weekly benefits made under the award or agreement as the date the employer was required to make the last payment under the

award, even if the setoff would not require the employer to make future payments after the arbitration decision.

If, after sorting out these matters, the commissioner finds Mid Seven still owed Coffey weekly benefits *after* the date of the arbitration decision, notwithstanding the offset occasioned by the third-party recoveries, the commissioner then must determine whether Mid Seven has paid the last installment of weekly benefits—and if it has, the date when that last payment of weekly benefits was paid. If the commissioner finds Mid Seven still owed Coffey weekly benefits after the arbitration award notwithstanding any offset allowed as a consequence of Coffey's third-party recoveries under section 85.22(1), the three-year statute of limitations for Coffey's petition for review-reopening began on the date Mid Seven made the last payment of weekly benefits.

However, if the commissioner finds Mid Seven is deemed to have paid all weekly benefits *prior* to the date of the arbitration award because of the credit afforded to it under section 85.22(1), we still must determine the date on which the statute of limitations commences.

Coffey's first argument is that Mid Seven's payment of $51,573.09 constituted weekly benefits paid under the award. Therefore, Coffey suggests the statute of limitations commenced when that payment was made, deeming his petition for review-reopening timely. We disagree with this argument for several reasons.

First, if the commissioner determines Mid Seven is credited with full payment of its obligations under the arbitration award as a consequence of Coffey's recoveries against the third-parties prior to the date of the $51,573.09 payment, that amount could not have been paid for weekly benefits because the credit under section 85.22(1) had already satisfied Mid Seven's obligation to pay weekly benefits under the award.

Second, the statute giving the employer or its insurer subrogation rights states:

> If compensation is paid the employee or dependent or the trustee of such dependent under this chapter, the employer by whom the same was paid, or the employer's insurer which paid it, shall be indemnified out of the recovery of damages to the extent of the payment so made, with legal interest, except for such attorney fees as may be allowed, by the district court, to the injured employee's attorney or the attorney of the employee's personal representative, and shall have a lien on the claim for such recovery and the judgment thereon for the compensation for which the employer or insurer is liable.

Iowa Code § 85.22(1).

The statute clearly provides that the employer or its insurer must pay its share of attorney fees *to the injured employee's attorney.* We have construed section 85.22(1)'s purpose as ensuring a fair distribution of attorney fees between the employee and the employer or its insurer when the efforts of the employee's attorney result in a third-party settlement. *Farris v. Gen. Growth Dev. Corp.*, 381 N.W.2d 625, 627 (Iowa 1986). Thus, the language of the statute makes clear that such payments are a reimbursement for attorney fees, not weekly benefits. As Coffey already paid attorney fees to his counsel for services rendered in achieving the third-party settlements, Coffey's attorney would be receiving double attorney fees or a windfall if he were allowed to collect and retain additional attorney fees from the employer for the same services. *See* Iowa Ct. R. 32:1.5 (discussing appropriate fees for legal services). Hence, in this case, Coffey's attorney was obligated to pay Coffey the fees received from Mid Seven as a reimbursement for attorney fees previously paid, rather than as weekly benefits paid by Mid Seven.

The next argument made by Coffey is that if Mid Seven paid all weekly benefits prior to the date of the arbitration award because of the

credit afforded by the third-party settlements, the statute of limitations commenced when this court denied the application for further review of the arbitration proceeding.

We do not have any caselaw interpreting the phrase, "the date of the last payment of weekly benefits made under the award or agreement," to instruct when the limitation period commences, where an injured employee receives a third-party settlement that offsets the employer's obligation to pay weekly benefits before the commissioner files his arbitration award. However, we do have caselaw interpreting this language where there has been a prior award of medical expenses, but no weekly benefits. *Beier Glass Co. v. Brundige*, 329 N.W.2d 280, 287 (Iowa 1983).

There, we interpreted section 85.26(2) and held where only medical benefits and no weekly benefits are awarded or agreed upon, the three-year statute of limitations commences from the date of the arbitration award or the filing of a memorandum of agreement. *Id.* This conclusion furthers the goal of liberally construing workers' compensation statutes in favor of the employee and provides certainty and predictability in results by using a readily identifiable event as the date when the limitation period commences. *Id.*

The same rationale applies when an injured employee receives a third-party settlement that offsets the employer's entire obligation to pay weekly benefits before the commissioner files the arbitration award. In this situation, until the commissioner enters an award as to the healing period or permanent partial disability, or the parties establish the healing period or permanent partial disability by filing a memorandum of agreement, the injured employee has no legally established entitlement to these weekly benefits. There may be times when the employer's

obligation to pay weekly benefits is fully satisfied before the injured employee's entitlement to weekly benefits is determined by final agency action or on judicial review of agency action. It would be unfair if the limitations period governing a claimant's time to file a review-reopening petition commenced from a date unknown by the injured employee. Moreover, by using the arbitration award date, the injured employee, the employer, and its insurer have a readily identifiable event defining when the limitation period for review-reopening proceedings commences.

Coffey argues the limitations period for review-reopening proceedings commences when either party exhausts its appeal. He contends this is the truly final date of the award. There is no merit to such an argument. As soon as the commissioner's decision is final, our district courts are required "to enter a judgment in conformance with the workers' compensation award." *Rethamel v. Havey*, 679 N.W.2d 626, 628 (Iowa 2004). In other words, the award is enforceable by the collection process once the court enters the judgment. It would be unfair to the employer and its insurer to toll the limitation period pending the appeal process when the injured employee can enforce the commissioner's decision in the district court without delay.

Accordingly, we hold where an injured employee receives a third-party settlement completely satisfying the employer's obligation to pay weekly benefits *before* the commissioner files the arbitration award, the three-year statute of limitations in section 85.26(2) commences from the date of the arbitration award. Consistent with our opinion in this matter, the agency shall, on remand, make findings necessary for its determination of whether Mid Seven's obligation to pay weekly benefits was completely satisfied by Coffey's recoveries from the third parties. If the commissioner determines on remand that Mid Seven's obligation to

pay weekly benefits under the arbitration award was not completely satisfied by the recoveries from the third parties, the statute of limitations on Coffey's review-reopening petition will commence running on the date Mid Seven makes its last payment of weekly benefits under the arbitration award. *See* Iowa Code § 85.26(2).

## VI. Medical Expenses.

In the original arbitration decision, the commissioner found Coffey's PPS was work-related and ordered Mid Seven to be "liable for all medical expenditures incurred because of claimant's post polio syndrome." Thus, the commissioner ordered Mid Seven to cover Coffey's section 85.27 medical expenses including "reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance and hospital services and supplies for all conditions compensable under the workers' compensation law."

In his petition for review-reopening, Coffey seeks additional benefits for PPS treatment, daytime somnolence, right knee and ankle osteoarthritis—conditions Coffey claims were caused or aggravated by PPS, a work-related condition. After intra-agency appeal of Coffey's review-reopening petition, the commissioner found the evidence insufficient to support a causal connection between Coffey's daytime somnolence and osteoarthritis in relation to his PPS. The district court affirmed. The district court concluded,

> [T]here is substantial evidence in the record to support the Commissioner's determination that Coffey failed to meet his burden of proof on some of the new medical expenses he claimed were causally connected to his work injury and/or his work-related condition.

However, the district court found Mid Seven is still liable for the cost of treatment at the University of Iowa on November 28, 2007, in the

amount of $808, as well as the treatment at Lucas County Health Center from October 27 to October 31, 2008, in the amount of $609.

We can only reverse the district court if we find the record does not contain substantial evidence supporting the commissioner's finding that certain medical expenses were not work-related. To recover for medical expenses in a workers' compensation action, the employee must demonstrate the personal injuries "ar[ose] out of and in the course of the employment." Iowa Code § 85.3(1). The burden rests upon Coffey "to show by a preponderance of the evidence that [these conditions] arose out of and in the course of his employment." *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 849 (Iowa 1995). To determine whether Coffey has met this burden, we ask whether the "commissioner's decision is supported by substantial evidence in the record made before the agency when that record is viewed as a whole." *Id.*; *accord* Iowa Code § 17A.19(10)(*f*). Under the definition of substantial evidence found in section 17A.19(10)(*f*)(1), we find the commissioner's decision rests upon substantial evidence, even though there is a possibility of drawing inconsistent conclusions from the same evidence. *See Arndt*, 728 N.W.2d at 393 ("An appellate court should not consider evidence insubstantial merely because the court may draw different conclusions from the record.").

Citing testimony from Coffey's experts, the commissioner found Coffey failed to show by a preponderance of the evidence that a work-related injury caused his daytime somnolence and osteoarthritis. Regarding the daytime somnolence, Dr. Joseph Chen testified and Dr. Donna Bahls indicated in a report that Coffey's fatigue *possibly* stems from his age, a sleep disorder, or one of the numerous other conditions from which Coffey suffers. Moreover, relating to his chronic

ankle pain due to osteoarthritis, Coffey admitted at a 2008 doctor visit that he has been able to adapt to his right ankle weakness caused by childhood polio and "does not feel his [current] symptoms are related to polio." Although we may not agree with the commissioner's findings, the record supports the conclusion that there was insufficient evidence to establish a causal connection between Coffey's daytime somnolence and osteoarthritis in relation to his PPS.

Accordingly, we affirm the commissioner's finding that only the treatment at the University of Iowa on November 28, 2007, for $808, as well as the treatment at Lucas County Health Center from October 27 to October 31, 2008, for $609, is causally connected to the work-related accident.

### VII. Disposition and Summary.

We reverse that part of the district court judgment affirming the commissioner's ruling on the statute of limitations for the petition for review-reopening. Accordingly, we remand the case to the district court to reverse the commissioner's decision regarding the statute of limitations and to remand the case to the workers' compensation commissioner with directions. The district court should direct the commissioner first to determine the unpaid amounts under the arbitration award and the review-reopening decisions for medical expenses, mileage, healing period, permanent partial disability, interest, and other amounts due under these decisions. Next, the commissioner should determine the credit due Mid Seven because of the third-party settlements. The district court should direct the commissioner in making the calculations to identify the date of the last payment of weekly benefits made under the award. If the actual date of the last payment of weekly benefits made under the award is *after* the date of the arbitration

decision, the three-year limitations period commences from the date of that payment. If the actual date of the last payment of weekly benefits made under the award is *before* the date of the arbitration decision, the three-year limitations period will commence from the date of the arbitration decision. If the commissioner finds Mid Seven has not paid all of the weekly benefits because the credit from the third-party settlement is inadequate to cover the weekly benefits due under the award, the three-year limitations period shall commence on the date Mid Seven's weekly benefit obligation is fully paid.

We affirm that part of the district court judgment that affirms the commissioner's ruling determining those medical expenses that are causally connected to the work-related injury.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**